## Rufus McKinzie v. Winford Stretch.

1. CONTRACTS—" Codding" and Joking.—Where a person's conduct and conversation is such as to warrant a reasonably prudent man to believe that he is in earnest, he will not be permitted to say, in case he makes a bad bargain, that he was "codding" and joking.

2. CONTRACTS—To be Enforced as Made.—Where a person offered another if he would breed a mare of his to a certain horse, to give him $100 for the colt as soon as it should stand up and suck, and the offer was accepted in good faith, the mare bred to the designated horse, the colt was foaled and "stood up and sucked," it was held that the person making the offer was bound by it, notwithstanding the colt died within ten days.

3. COMPROMISE—Offers of, When Admissible.—An offer to compromise a disputed claim to avoid litigation, is not as a general rule admissible in evidence, but when such offer amounts to an admission of liability the rule is different.

4. VERDICT—Less Than it Should Have Been.—The fact that the amount of the verdict was less than it should have been, is no ground for complaint by the defendant.

Memorandum.—Assumpsit. Error to the County Court of McLean County; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the November term, 1893. Opinion filed February 12, 1894.

The opinion states the case.

FRANK R. HENDERSON and EZRA M. PRINCE, attorneys for plaintiff in error.

WELTY & STERLING, attorneys for defendant in error.

McKinzie v. Stretch.

Mr. Justice Pleasants delivered the opinion of the Court.

This suit was brought by defendant in error against the plaintiff in error, before a justice of the peace, upon an alleged agreement by the defendant below to pay him for a colt to be had out of a certain mare, then owned by him, and formerly by the defendant, by a certain horse, the sum of $100, as soon as it should stand up and suck. The case has been tried four times, each by a jury. The first verdict in the County Court was set aside and a new trial granted. Upon the second, judgment was entered, but reversed and the cause remanded by this court. The third resulted in a verdict for the plaintiff for $90, which the court refused to set aside, and upon the rendition of judgment thereon, this writ of error was sued out.

It was claimed by plaintiff that the agreement was made somewhat suddenly, in the forenoon of the 28th of April, 1890, while the parties were plowing together in his field. That he took and bred the mare to the horse in the afternoon of the same day, and that the colt did stand up and suck, are facts as to which there was clear proof and no controversy. But it lived only about ten days. It is conceded also that the defendant did say to plaintiff at the time mentioned that if he would breed the mare to the horse, he, defendant, would pay him for the colt $100 as soon as it should stand up and suck. But he claimed further, first, that he made it a condition, plaintiff's mare being a dark brown, that the colt should be a " point blank match," to one he expected from a bay mare bred to the same horse, and that it was not a match; and second, that what was said between them on the subject was in joke.

The only issues of fact were upon these claims, as to which the legitimate evidence was conflicting, presenting a case fairly debatable and so within the peculiar province of the jury to decide.

But it is insisted that the court admitted improper, and excluded proper evidence, and erred to the prejudice of the defendant in giving and refusing instructions.

Some questions put to the plaintiff on his direct examina-

tion are referred to as very objectionable in form. Of these, some had already been answered, others related to facts not disputed, and still others were so answered as to show that they had not been suggestive. It is a waste of time to object to such, get a ruling, and have the form changed, to no purpose.

On cross-examination he was asked if there was any " codding " or joking " at any time during the time of making this alleged trade," and upon objection thereto the court said : " Just state what was said and done." Obviously, an affirmative answer to the question would have thrown no light upon the issue. The naked opinion of a party to an alleged horse sale or horse trade, that there was some " codding " and joking in the course of negotiation, could not help a jury to decide whether the transaction in question, which was an agreement in form, was or was not intended to be such in effect.

Complaint is made of the exclusion of parts of the deposition of Harperree, who was also plowing for plaintiff in the same field, but as we understand the evidence, was about a hundred yards behind the parties, who had stopped together at a turn, when the alleged agreement was made. From their manner and what he had heard of their talk, after he came up—of which the subjects and a little of what was said he stated—he thought they were not in earnest, and considered that McKinzie's giving Stretch $100 for the colt was jest, and for that reason did not remember the particular terms nor pay attention to the details. What he so thought and considered was all that was excluded. It may be presumed that the court held his opinion of a verbal agreement, if there was one, which he did not hear, based alone upon the jocularity of a subsequent conversation between the parties about it, was not evidence, and not that his statement that what he did hear was jocular, was mere opinion, and therefore inadmissible; for defendant's counsel had been allowed, over plaintiff's objection, to ask him " whether or not there was any talk in earnest about selling the colt at all ? " to which he answered, " No, sir; if there was I didn't understand it so; " and a motion by plaintiff to strike

McKinzie v. Stretch.

out the question and answer was denied. Plaintiff himself had admitted that he thought he had the best of the bargain and afterward "codded" the defendant about it, which is not such an unusual or inconsistent thing as should discredit the allegation of a bargain in fact. We think the exclusion complained of was proper.

Defendant offered evidence to prove the actual value of the expected colt, upon the idea of showing, by the disparity between such value and the alleged contract price, the improbability of such a contract; and the refusal of its admission is one of the errors assigned.

There is no pretense that defendant's agreement to pay the price alleged, if he did agree to pay it, was induced by fraud or misrepresentation, or made in ignorance of any material fact. In his talk with plaintiff he had spoken of the high prices recently reported as paid for matches in Chicago. He knew the proposed sire and dam. Doubtless he hoped to get a match for his own colt. Fancy has its influence in such cases. Here the price was fixed before the colt came or its actual value could be known. It was fixed at a venture, with full knowledge of the chances. We think the bearing of the evidence offered was too remote.

It is said that defendant's case was materially prejudiced by the vacillation of the court in its rulings upon the admissibility of offers to compromise; that such evidence was first admitted, afterward excluded, with an announcement of the rule, and still later admitted again; so that defendant got no benefit from the exclusion or from the instruction finally given to the jury to disregard all such evidence.

It appears that plaintiff testified that the day after the colt came and after the defendant had seen it, he wanted plaintiff to take $12 "to let him out;" that upon his refusal, defendant urged it; that "he put up a pitiful mouth and said he had not done anything of that kind before, and to let him out," and that "about all he would come over was to ask me to let him off with $12, the season of the horse." To this no objection appears to have been then made. Nor do we regard it as an offer to compromise a disputed claim, but an admission of liability. Another witness for plaintiff tes-

tified to the same effect, and still another to defendant's admission that he had offered $12 "to settle." On motion of defendant, at the close of plaintiff's case in chief, the court excluded all the evidence relating to the offer of $12, with a statement in the hearing of the jury, of the rule in relation to offers to compromise, in which ruling we think it went too far. But it is complained that after so tardily instructing the jury on this point the court allowed it to go before them again on the cross-examination of defendant, to whom the question—an interrogative statement—was put: "You offered to compromise with him?" which, after objection overruled, he answered "Yes, sir." This was on cross-examination, and the form of the question seems to indicate that he had previously stated something about such an offer. Turning to the record we find that near the close of his examination in chief he said: "I have tried to compromise it with him, and I couldn't get much out of him except $100. Nothing but $100, he said, would settle it, and that was about all I could get out of him about it. If I brought in any plea of any kind he said that nothing but $100 would settle it." This statement was made after the ruling above mentioned, and was responsive to the question asked by his counsel. With the action of the court on this subject the defendant is therefore not in condition to find fault.

If the first instruction for plaintiff stood alone it might seem to assume that an agreement was made as he claimed, but would hardly be so understood. All danger of misunderstanding, however, is removed by the fifth.

The first of defendant's, refused, was not limited to offers of settlement or payment, as a compromise. In the third, given, the law is accurately stated. There was no evidence on which the second and third, refused, could be based. What was offered was not admitted, and for reasons already stated, was properly excluded.

That the amount of the verdict was less than it should have been, if any was proper, is no ground for complaint by defendant.

We find in the record no sufficient cause for reversal. Judgment affirmed.