### EDWARD T. FINN

*vs.*

### NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

### Kennebec.    Opinion March 19, 1906.

*Evidence. Cross-examination. Collateral Matters. Compromise Offers. Intention of Party Seeking Compromise Governs. Preliminary Question as to Intention to be Determined by Presiding Justice. Judicial Discretion not Exceptionable.*

In an action on the case for negligence, the plaintiff introduced testimony tending to show that the accident in which he was injured was occasioned through the negligence of the foreman, who assured him, without any action or warning as he was about to enter the place of danger to begin his work, that everything was all right. The foreman was a witness for the defendant, and on cross-examination was asked whether he had not on the evening of the accident requested the night editor of the local news- paper not to publish any account of the accident in the paper, and denied that he had done so. The plaintiff then offered evidence that the foreman on the evening of the accident did request said night editor to suppress the account of the accident, which evidence was excluded.

*Held:* that the answer of the foreman that he had not requested the suppression of the account of the accident was in response to a question involving a collateral matter brought out on cross-examination and therefore could not be contradicted.

As tending to show an admission of liability on the part of the company for the accident, the plaintiff offered evidence that a few weeks after the accident the plaintiff, without any request on his part and before he had made or filed any claim, was sent for by the local manager of the defendant company and was offered by the company through such manager two checks covering the expenses of the accident, accompanied by a receipt which he

was requested to sign for said amount; that said statement or receipt contained a clause releasing and discharging the defendant company from all liability for this particular accident which was then specifically mentioned and described; that the plaintiff refused to sign and the checks were not delivered to him. This evidence was also excluded.

*Held:* that the above offer fell within the rule of compromise offers which is in cases of tort that, when a party has reasonable ground for anticipating that a demand will be made against him for damages, the claim may then be said to so far exist as to authorize him, without any move on the part of the claimant, to seek a settlement of it and to be protected in so doing by the general rules of law applicable to compromise settlements. That is, an offer to purchase peace either with intent to prevent a possible controversy or to end one that has arisen, cannot be used in evidence as an admission of liability.

*Held:* Also, that the admissibility or non-admissibility of evidence offered to prove an alleged compromise depends upon the intention of the party seeking it. If he intends his offer to be a compromise settlement it is inadmissible. If he intends it to be an admission of liability, coupled with an endeavor to settle such liability, then it is admissible to prove such liability.

In the case at bar it was clearly within the province of the court to determine the preliminary question of fact as to what was the intention of the defendant in making the alleged offer of settlement. To the exercise of his discretion in this respect no exception can lie.

On exceptions by plaintiff. Overruled.

Action on the case to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant company, and alleged to have been caused by the negligence of the defendant company. Plea, the general issue. Verdict for defendant.

At the trial, the plaintiff offered certain evidence which was excluded, and thereupon the plaintiff excepted.

The case is stated in the opinion.

*Williamson & Burleigh,* for plaintiff.

*Cornish & Bassett,* for defendant.

SITTING: WISWELL, C. J., EMERY, SAVAGE, POWERS, SPEAR, JJ.

SPEAR, J. This was an action on the case for negligence. The plea was the general issue. The plaintiff, a telephone lineman, while in the employ of the defendant company, was injured by a live wire of high voltage with which a telephone cable, upon which he had

been directed to work by the defendant's foreman of a crew, came in contact. The verdict was for the defendant. The case comes up on exceptions by the plaintiff to the ruling of the presiding justice in excluding certain evidence that was offered by him.

1. The plaintiff introduced testimony tending to show that he was in the exercise of due care himself and that the accident was occasioned through the negligence of the foreman who assured him, without any caution or warning as he was about to enter the place of danger to begin his work, that everything was all right.

The foreman was a witness for the defendant and testified that he had no recollection of saying that everything was all right, but that if he did say so his meaning was misconstrued by the plaintiff; but the plaintiff contends that his testimony was to the general effect that, personally, he had been guilty of no negligence in providing a reasonably safe place for the plaintiff to work nor in any other respect. On cross examination he was asked whether he had not on the evening of the accident requested the night editor of the local newspaper not to publish any account of the accident in the paper, and he denied that he had done so. The plaintiff then offered evidence that the foreman, on the evening of the accident, did request said night editor to suppress the account of the accident, which evidence was excluded.

In discussing this exception we shall assume that the foreman was not a fellow servant of the plaintiff but represented the master at the time of the accident in the discharge of a duty owed by the master to the plaintiff.

It is a familiar rule of evidence that a witness cannot be contradicted as to collateral matter brought out upon cross examination. Was the answer by the foreman, then, that he had not requested the suppression of the account of the accident in response to a question involving a collateral matter? We think it was.

What is collateral matter? In *Page* v. *Homans*, 14 Maine, 478, it is said "that a collateral fact not bearing upon the issue elicited in cross examination is not to be contradicted." From this it would appear that "a fact not bearing upon the issue" is collateral. In *Ware* v. *Ware*, 8 Maine, 42, at page 53 it is said questions are

merely collateral that "have no immediate connection with the cause." Wigmore on Evidence, volume 2, sec. 1003, lays down the test as to whether evidence elicited upon cross examination is collateral, to be this: "Could the fact as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction."

The plaintiff's brief frankly says: "We do not claim that the evidence should have been received on the ground that it was an admission of liability by an agent of the defendant which would bind the corporation . . . . on the contrary had the foreman not been a witness in the case an offer of the answer in question would, we think, have been rightfully refused."

Applying the above tests, could the plaintiff have shown, independently of any contradictory effect, that the foreman on the evening of the accident requested the night editor not to publish any account of the accident? If not, then the denial of the foreman that he did make such a request was with respect to a collateral matter.

Now the issue in the case on trial involved the alleged nonperformance by the master of the duty to provide a reasonably safe place for the servant to work, due to the alleged negligence of the foreman in not having the place made safe. The alleged request of the foreman to the night editor of the newspaper, if true, was long after the accident and entirely without the scope of his duty or authority, and could have no possible relevancy tending to prove or disprove the issue in question, as conceded in plaintiff's brief above quoted. The evidence offered was therefore to contradict a collateral matter brought out on cross examination.

But the plaintiff says further that while the alleged suppression was entirely independent of his duties to the corporation and unauthorized by it, yet it should have been admitted for the purpose of contradicting the witness; but it seems to us that this is seeking the admission of testimony in direct violation of the rule just considered, the very reason for which assumes that collateral evidence is capable of being contradicted, and the very object of which is to prevent

such contradiction and the consequent extension of a trial by the introduction of contentions irrelevant to the main issue.

II.   As tending to show an admission of liability on the part of the company for the accident, the plaintiff offered evidence that a few weeks after the accident the plaintiff, without any request on his part and before he had made or filed any claim, was sent for by the local manager of the defendant company at Ellsworth, Maine, the home of the plaintiff, and was offered by the company through such manager two checks covering expenses of the accident accompanied by a receipt which he was requested to sign for said amount; that said statement or receipt contained a clause releasing and discharging the defendant company from all liability for this particular accident, which was therein specifically mentioned and described; that the plaintiff refused to sign the same and the checks were not delivered to him.   The exclusion of this evidence constitutes the second ground of exception.

The real question to be determined upon this branch of the case is whether the attempted negotiations of a settlement by the defendant company falls within the rule protecting compromise settlements. If it did, then the offer of the defendant was inadmissible.   It is a rule too familiar to require citation that an offer to compromise a claim or to purchase peace cannot be shown to prove admission of liability.   The plaintiff contended that the defendant's offer does not fall within this rule because there was no evidence that any claim had been made or filed by him, and that until a claim is made or an actual controversy arises the rule does not apply.   But the rule is not so limited, and the alleged limitation is not sustained, either by reason or authority.

The rule relating to a matter so important to both sides of a controversy should be founded upon a substantial and not upon a meaningless distinction.   Suppose a collision of trains on a railroad by which a person in the exercise of due care is injured, where liability is as a rule fixed by law?   Can it be said in this case that no claim exists against the defendant until the party injured formally presents one?   The only distinction between this and other cases of tort for injuries, is with respect to the diligence required to be proven

against the tort feasor to bring him within the rule of ordinary care. In either case it seems to us it would be a delusion to claim that the tort feasor was not authorized to anticipate a claim. A normal state of mind would naturally raise such anticipation.

Now what makes the difference, whether a defendant, impressed with this view of the situation, waits until the claim against him is formally filed, or anticipates what he believes to be true, that the claim will be filed, and then attempts to make overtures of settlement or to buy his peace? We are unable to discover any good reason why he should not do so in the one case as well as in the other and be protected in so doing. In cases of tort the proper rule should be that, when a party has reasonable grounds for anticipating that a demand will be made against him for damages, the claim may then be said to so far exist as to authorize him, without any move on the part of the claimant, to seek a settlement of it and to be protected in so doing by the general rules of law applicable to compromise settlements. That is, an offer to purchase peace made either with intent to prevent a possible controversy or to end one that has arisen, can not be used in evidence as an admission of liability.

And why should not this be so? The early reasons underlying the principles of law pertinent to compromise settlements applied to business conditions and methods entirely different from those which prevail today. If we go back the short period of fifty years we shall find the existence of corporations employing large bodies of employees to be comparatively a rare instance ; but today nearly all the industries of the state are operated through the agency of corporations, engaged in kinds of business that entail every degree of hazard known to the operation of machinery and the use of the ordinary utensils of labor. Under these conditions, accidents, the risks of which must necessarily be assumed by the employees and for which no liability can be fixed, must constantly and frequently occur. Should there be a rule of law existing in this state that an employer of labor whether a corporation or individual, in view of an accident and injuries to one of his employees, for which he is in no sense liable, shall not be allowed the privilege of approaching such employee and assuming the payment of the necessary expenses of his injuries and continuing, or offering

to continue, his name upon the pay roll; or of paying him a definite sum of money, or aiding in the support of his family, without having his act of generosity and kindness offered in evidence against him as an admission on his part of liability? It seems to us that such a rule under present conditions would be far more liable to operate injuriously to the interests of the employee than to those of the employer. We think the time has come when, if a different rule has obtained, the one which we have herein laid down should be substituted for it and hereafter prevail as the rule of law in this state.

While we are unable to find that the exact point in controversy has been decided in our state we believe that the best modern authorities sustain the views above expressed. Wigmore on Evidence, volume 2, sec. 1061, after discussing very fully the rule and the various theories which have been given for it, finally lays down what the writer believes to be the true theory as follows: "The true reason for excluding an offer of compromise is that it does not ordinarily proceed from and imply a belief that the adversaries' claim is well founded but rather a belief that a further prosecution of that claim, whether well founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered; in short, the offer implies merely a desire for peace, not a concession of wrong done. . . . By this theory, the offer is excluded because as a matter of interpretation and inference, it does not signify an admission at all. There is no concession or claim to be found in it, expressly or by implication. It would follow then, conversely, that if a plain concession is in fact made, it is receivable, even though it forms part of the offer to compromise; but this much has long been well understood."

The same authority quotes with approval *Colburn* v. *Groton*, 66 N. H. 151, in which Chief Justice Doe in an elaborate opinion said: "The preliminary question is, not merely whether an admission of fact was made during a settlement or negotiation, or whether a statement or act was intended to be an admission, which is a question not of time or circumstances but of intention. On that question the time and circumstances may be material evidence; an offer of payment whether accepted or rejected, is evidence, when the party making it

understood it to be and made it as an admission of his liability. It is not evidence when he made it for the purpose of averting litigation not intending to admit his liability . . . . . . the entire claim may be paid to avoid a lawsuit the payer intending to admit nothing but his desire for peace."

From these authorities it would seem clear that the admissibility or non-admissibility of evidence offered to prove an alleged compromise depends upon the intention of the party seeking it. If he intends his offer to be a compromise settlement it is inadmissible. If he intends it to be an admission of liability coupled with the endeavor to settle such liability then it is admissible to prove such liability. But who is to determine the preliminary question of intention? The court should do so unless the only inference from the testimony offered shows that the intention in offering the compromise was not to buy peace. If an intention to buy peace can be inferred from the offer, then it is within the province of the court to determine the preliminary question, himself, or submit it to the jury with proper instructions.

In the case at bar, it was clearly within the province of the court to determine the preliminary question of fact as to what was the intention of the defendant in making the alleged offer of settlement. To the exercise of his discretion in this respect no exception can lie.

*Exceptions overruled.*

---

EMERY, J. I concur in the opinion as to the first exception. I concur in the result as to the second exception. I think it immaterial whether or not the offer of the local manager was for the purpose of compromise, he not having been a witness. His acts or statements, days after the event which he did not witness, at the most only indicated his then personal opinion upon the question of the defendant company's liability, an opinion based solely upon the statements of others. These statements may have been unfounded in fact. The opinion itself may have been erroneous. In any case it was a mere opinion and not evidence of any material fact.