A. J. Smothers et al., Trustees of Pleasant Grove Methodist Episcopal Church of Williamson County, Illinois, Defendants in Error, v. Cosgrove-Meehan Coal Company of Illinois, Plaintiff in Error.

Opinion filed February 1, 1932.

WILLIAM H. WARDER and HOSEA V. FERRELL, for plaintiff in error.

E. M. SPILLER and D. L. DUTY, for defendants in error.

MR. JUSTICE EDWARDS delivered the opinion of the court.

Defendants in error, hereafter referred to as plaintiffs, in 1929 were trustees of the Pleasant Grove Methodist Episcopal Church, in Williamson county. The church property consisted of about five acres of land, on which was situated a church building and a cemetery. The land was underlaid with coal. Plaintiff in error, hereafter designated as defendant, at the same time was the owner of a coal mine adjacent to the church premises, and in the course of its mining operations, entered the vein of coal beneath plaintiffs' property and mined therefrom a considerable quantity of coal. The trespass and taking of the coal are admitted, the only controverted question being the amount of damages thereby sustained.

Plaintiffs brought suit in trespass. The declaration consisted of six counts. The first charged a simple trespass by force and arms; other counts charged that defendant, through negligence, entered the coal vein of plaintiffs and took the coal; the remaining counts averred that the trespass was wilfully and wantonly committed. Issue was joined upon proper pleadings,

and upon a trial a jury found defendant guilty and assessed, by general verdict, damages in the sum of $11,035.

Three special interrogatories were submitted to the jury: first, to determine the number of tons mined and taken away, which the jury found to be 7,701 tons; second, to ascertain the market value of the coal taken, when loaded upon railroad cars at the mouth of the pit, which was by the jury answered as being $1.97 per ton; third, the cost of loading such coal into the pit cars, conveying same to the shaft, and then hoisting and dumping same into the railroad cars; this the jury found to be 97 cents per ton. Motions for new trial, and to set aside the verdicts, both general and special, were made and overruled, and judgment entered for the amount of the general verdict, to review which this writ of error was sued out.

It will be noted that, based upon the foregoing special findings, the compensatory damages were assessed at $7,701, and that the remainder of the general verdict, or $3,334.00, was awarded by way of punishment.

Defendant contends there was no proof to justify the special verdict, that 7,701 tons were taken, and urges that the proper amount was 6,404 tons. The evidence as to the larger amount is a written statement furnished to plaintiffs by a Mr. Woods, who, as representative of defendant, was negotiating with plaintiffs' attorney with a view to adjusting the controversy, and which statement had been prepared by the chief engineer of defendant. Defendant objected to the introduction of such statement in evidence, on the ground that it was furnished during an effort to settle the dispute, and hence was privileged; also, that Woods had no authority to bind defendant, and that he had no personal knowledge of the matters set forth in the statement. The trial court admitted the statement, and the ruling is assigned as error.

The trespass and the taking of plaintiffs' coal by defendant were not denied, but on the contrary were admitted, and the negotiations were entered into solely for the purpose of determining and settling the amount of damages. Where liability is disputed, the rule is elementary that offers of compromise are not admissible. Where, however, the liability is admitted, or is not denied, and the only question discussed is the amount to be paid, the rule of exclusion does not apply. 22 Corpus Juris, 313, citing numerous authorities.

In *Teasley v. Bradley,* 110 Ga. 497, 35 S. E. 782, the Supreme Court of Georgia stated: "There is a distinction between an offer or proposition to compromise a doubtful or disputed claim, and an offer to settle upon certain terms a claim that is unquestioned. An admission made in an offer of the latter character will be admissible." To the same effect are: *McKinzie v. Stretch,* 53 Ill. App. 184; *Hood v. Tyner,* 3 Ind. App. 51, 28 N. E. 1033; *Person v. Bowe,* 79 Minn. 238, 82 N. W. 480; *Finn v. New England Telephone & Telegraph Co.,* 101 Me. 279, 64 Atl. 490.

Here, both parties proceeded to negotiate for a compromise upon the basis of an admitted liability, and with a view only to adjusting the damages. The statement referred to was therefore not obnoxious to the general rule. Woods was the agent of defendant, authorized to negotiate for a settlement of the damages, and the offer made by him, through his written statement, was binding upon his principal. We are of opinion that the court's ruling was correct.

It is further insisted that there was no evidence upon which the jury could base its second special finding, that the market value of the coal was $1.97 per ton. The proof is that during 1928, defendant's mine sold, at the mouth of the pit, 458,000 tons of mine-run coal. Of this amount, 263 tons were sold to miners and others at a retail price of $2.50 per ton; the remainder,

in cars at the mouth of the pit, on a mine-run basis, was worth $1.717 per ton. This was a large producing mine, selling in great quantities, and where such is the case, the market price of small amounts, sold at retail, is not the standard. The market value is the price when sold in large quantities. *Wendnagel v. Houston,* 155 Ill. App. 664, 667. We think the jury's finding on this interrogatory should have been $1.717 per ton.

As to special finding number three, it seems to be conceded, and the authorities hold, that the amount of deduction from the value of the coal at the mouth of the pit, to which defendant is entitled, is the cost of loading and hauling to the foot of the shaft, and the hoisting and dumping it into the car at the top. *McGuire v. Boyd Coal & Coke Co.,* 236 Ill. 69, 72.

Sidney Jenkins, manager of this particular mine, testified that the cost of loading coal into the pit cars was 71 cents per ton; transporting to the bottom of the shaft, 8 or 9 cents per ton; hoisting and dumping into the cars for shipment, 18.8 cents per ton, making a total of about 97 cents per ton. True, this witness subsequently stated that the total cost of such operations was $1.277 per ton, but such estimate was not itemized and we cannot know what he had in mind in making same. We are of opinion that the jury were warranted in their finding on the third special verdict.

The proof shows that five per cent of the coal taken from this mine, at the time in question, was impure, and under the rule stated in *McGuire v. Boyd Coal & Coke Co., supra,* was a proper deduction on behalf of defendant.

The jury were warranted in finding the gross tonnage of coal taken, to be 7,701 tons, but should have deducted five per cent for impurities, leaving a net amount of 7,326 tons, and should have fixed the market price at $1.717, less the deduction of 97 cents per ton

as found by them thus making the net price $.747 per ton. By computation of these figures, the plaintiffs were only entitled to recover, as compensatory damages, the sum of $5,471.52.

A substantial part of the verdict was for exemplary damages. The point is made that, under the proof, the jury were not warranted in making such award. Defendant contends, and plaintiffs admit, that the wilful and wanton counts of the declaration charge a crime, and that where this is the case, the same must be proven beyond a reasonable doubt. This rule is well established. *McInturff v. Insurance Co. of North America,* 248 Ill. 92, 99.

Though the proof shows that defendant was guilty of negligence in operating under plaintiffs' property, yet to justify an award for punitive damages, it must appear that defendant acted wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. *Consolidated Coal Co. of St. Louis v. Haenni,* 146 Ill. 614, 628.

Jenkins, the mine boss, testified that he believed the coal was the property of defendant, until informed to the contrary by William Mitchell, engineer for defendant, who ordered the work to stop. Homer Whiteside, another boss, stated he did not know to whom the coal belonged. Mitchell's testimony is that if he knew the entries would go under plaintiffs' premises, he went on in ignorance or without a thought of it. The testimony of certain miners was introduced to show that Jenkins and Whiteside were asked whether the work was not under the church property, and that they either ignored the question or made evasive replies.

It may well be, as stated by Jenkins, that even though they had reason to know they were on plaintiffs' premises, they believed defendant was the owner of the coal, and that their conduct was devoid of evil intention, though unquestionably negligent.

Plaintiffs, under the wanton counts of the declaration, as the same charged a crime, assumed the burden of proving such beyond a reasonable doubt. *McInturff v. Insurance Co. of North America, supra.* This degree of proof has not been established, and the jury were not warranted in making an award for punitive damages.

If plaintiffs will file a remittitur, in the sum of $5,563.48, within 15 days, in the office of the clerk of this court, the judgment will be affirmed for the balance; otherwise reversed and remanded.

*Affirmed upon remittitur; otherwise reversed and remanded.*