**STATE of Maine**

**v.**

**Shawn LITTLE**

Supreme Judicial Court of Maine.

Argued March 5, 1987.
Decided July 1, 1987.

Paul Aranson, Dist. Atty., Edward Liggins (orally), Asst. Dist. Atty., Portland, for plaintiff.

David Beneman (orally), Levenson & Vickerson, Portland, for defendant.

Before NICHOLS, ROBERTS,* WATHEN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Shawn Little appeals a judgment entered by the Superior Court, Cumberland County, on a jury verdict finding him guilty of armed robbery, 17–A M.R.S.A. § 651(1)

---

* Roberts, J., sat at oral argument and participated in the initial conference, but did not participate in the final decision.

(1983) (Class A). The sole issue is whether the trial justice erred in admitting evidence of unsolicited incriminating statements made by the defendant to a police detective. The defendant contends that his statements were made in connection with an offer to plead guilty and so are barred by M.R.Evid. 410. We affirm the judgment.

On the evening of July 8, 1985, Robert's Mobil filling station in Portland was robbed by a man wielding a knife. The defendant was arrested a few hours later and charged with the robbery. Three weeks later the defendant, who had been released on bail, unexpectedly walked into the office of Daniel Young, a police detective with the Portland Police Department. The defendant told Detective Young that he wanted to talk with him. Because others were present, Detective Young led the defendant into an interview room.

In the interview room the defendant told Detective Young that he had to help him. The day after the defendant was arrested, the defendant's attorney had specifically requested Detective Young not to interview the defendant, and Detective Young had acceded to the attorney's request. Therefore, Detective Young told the defendant that his attorney had requested Detective Young not speak to the defendant, that Detective Young could not talk to the defendant, and that the defendant should proceed through his attorney. The defendant then said that Detective Young had to help him and that he could not go to jail for five years because of the robbery. Detective Young forcefully refused again to discuss the matter. The defendant responded that his attorney was not doing anything for him and that he could not go to jail for that armed robbery. The defendant said, "I want to make a deal."

At that point Detective Young stood and said, "Shawn, I can't talk to you about it. I can't make any deals. You have a lawyer. Call ... the District Attorney's of-fice." The defendant also stood and reiterated that Detective Young had to help him and that he could not go to jail. The defendant said, "I will do anything, set up fences, squeal on guys doing things, tell you everything, just help me. Let's make a deal." The defendant went on to say, "You know I did the robbery, help me make a deal." Detective Young twice again told the defendant he could not make any deals, that the defendant should talk to his attorney, and that the attorney should get in touch with the District Attorney's office. Detective Young then ended the interview by opening the door and leaving. The entire episode lasted 4 to 5 minutes.

The defendant moved *in limine* to exclude his statements made during the interview with Detective Young on the ground that they were made in connection with a plea offer. The court found after a hearing that the defendant was at the time acting pro se and was attempting to negotiate a plea. The court held, nevertheless, that Detective Young had at the outset put the defendant on notice that Detective Young was not capable of discussing or agreeing to anything that would affect the pending armed robbery charge. The court concluded by finding that, given Detective Young's disclaimer of authority and adamant refusals to discuss the matter, the defendant did not have an "objectively reasonable belief that what was going on [was a] discussion[ ] relating to pleas." The defendant argues on appeal that the trial court violated Rule 410[1] of the Maine Rules of Evidence by admitting evidence of his statements to Detective Young. We disagree.

## I.

The process commonly referred to as plea bargaining, discussions and negotiations regarding possible pleas and the plea agreements resulting from them, is an integral part of the administration of criminal

---

1. M.R.Evid. 410 provides as follows:

Except as otherwise provided, evidence of a plea, later withdrawn, of guilty or nolo contendere, or of an offer so to plead to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

justice in this state as elsewhere in this country. *See Santobello v. New York,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971); *Brady v. United States,* 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1470–71, 25 L.Ed.2d 747 (1970). Although it is commonly recognized that, properly administered, plea bargaining can benefit all concerned, its particular value to both the State and courts alike is that it permits the speedy and relatively inexpensive disposition of numerous cases on crowded criminal dockets. *See Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). Given the importance of guilty pleas and in the interest of protecting the plea bargaining process which often culminates in a guilty plea, it is essential that an accused be free to negotiate a plea without fear that any incriminating statements he makes while engaged in plea negotiations will be used against him in other proceedings.

■ Rule 410 plays a crucial role in promoting plea negotiations by at the same time encouraging and protecting free plea dialogue between the accused and the government. *United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978). To promote discussion inquiry must focus on the accused's perceptions.[2] *See United States v. O'Brien,* 618 F.2d 1234, 1240–41 (7th Cir.1980), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); *United States v. Geders,* 585 F.2d 1303, 1305 (5th Cir.1978), *cert. denied* 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979); *Robertson,* 582 F.2d at 1366; *United States v. Herman,* 544 F.2d 791, 796–97 (5th Cir. 1977). Whether a statement ought to be excluded under Rule 410 depends on whether the discussion in which the statement was uttered may properly be characterized as a plea negotiation. This is a question of fact and turns on the circumstances of each case. *Robertson,* 582 F.2d at 1366.

■ We think that the best way of determining whether a discussion should be characterized as a plea negotiation is for the trial court to consider carefully the totality of the circumstances in each case, employing the two-tier analysis formulated in *United States v. Robertson,* 582 F.2d at 1366:

> The trial court must ... determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the circumstances.

The first tier of this analysis encourages and protects the expectation of an accused who attempts to negotiate a plea. *Id.* at 1367. The second tier serves as a check on an accused's after-the-fact assertions regarding his prior subjective mental state. *Id.*

■ The trial court here found that the defendant was acting pro se and had a subjective expectation of negotiating a plea. But the court further found that the defendant's expectation of negotiating a plea at the time of the discussion was not reasonable given the totality of the objective circumstances. As soon as Detective Young was apprised of the purpose of the conversation and before the defendant had made any incriminating statements, Detective Young immediately declined to discuss the matter and referred the defendant to his attorney and the District Attorney's office. Thereafter Detective Young emphatically refused to discuss the matter further, and after reiterating his position several times, abruptly terminated the interview. Given these objective circumstances, we cannot say that the trial court's finding that the defendant did not entertain a reasonable expectation of negotiating a plea at the time of the discussion was clearly erroneous. *See Commonwealth v. Wolf,* 353 Pa.Super. 483, 485–89, 510 A.2d

---

**2.** An inquiry focusing on the subjective mental state of one making an offer is not new. Under Maine common law exclusion of evidence of an offer to compromise turned on the subjective intention of the person making the offer. *See, e.g., Hunter v. Totman,* 146 Me. 259, 268–69, 80

A.2d 401, 406 (1951); *Finn v. New England Tel. & Tel. Co.,* 101 Me. 279, 283, 64 A. 490, 491 (1906); *Beaudette v. Gagne,* 87 Me. 534, 537–38, 33 A. 23, 23–24 (1895); *Cole v. Cole,* 33 Me. 542, 545 (1852).

764, 766–67 (1986); *McKenna v. State*, 101 Nev. 338, 705 P.2d 614, 618–19 (1985) (per curiam), *cert. denied*, —— U.S. ——, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Haynes v. Commonwealth*, 657 S.W.2d 948, 951 (Ky. 1983).

## II.

■ We expressly reject any reading of Rule 410 which would limit its application to discussions involving an attorney for the prosecuting authority.[3] We are aware that the corresponding federal rule was amended in 1979 to limit inadmissibility to statements "made in the course of plea discussions *with an attorney for the prosecuting authority.*" Fed.R.Evid. 410(4) (emphasis added). But we are convinced that such a per se rule, which turns on the actual authority of the government representative to negotiate a plea, is capable of working substantial injustice in many cases.

An unrepresented accused, unsure of the scope of law enforcement officers' actual authority to negotiate, often attempts to engage in plea negotiations with the police. *See Herman*, 544 F.2d at 798–99. Although the constitutional law governing confrontations between law enforcement officers and accuseds may in many cases operate to exclude an accused's incriminating statements,[4] it is not uncommon for an accused expressly to waive his *Miranda* rights while attempting to negotiate a plea. *See, e.g., United States v. Pantohan*, 602 F.2d 855 (9th Cir.1979); *Robertson*, 582 F.2d at 1356; *United States v. Smith*, 525 F.2d 1017 (10th Cir.1975). Limiting Rule 410 solely to discussions involving an attor-

ney for the prosecuting authority can easily prejudice an accused who made damaging admissions when he thought he was making an offer to plead after having explicitly waived constitutional protections. Basic fairness to an accused who in good faith makes a reasonable attempt to engage in plea negotiations requires that the State be foreclosed from using an accused's well-intentioned but misdirected efforts against him at trial should plea negotiations ultimately break down. *See Herman*, 544 F.2d at 797–98; *United States v. Brooks*, 536 F.2d 1137, 1139 (6th Cir.1976); *United States v. Ross*, 493 F.2d 771, 775 (5th Cir.1974).

We do not construe M.R.Crim.P. 11(e)(1) and (5) to limit application of Rule 410 to discussions involving an attorney for the State. The current version of Rule 11 was intended to "formalize the current practice in the Superior Court." M.R.Crim.P. 11 advisory committee's note to 1976 amend., Me.Rptr., 344–351 A.2d XXXVIII. Like the earlier version of the corresponding federal rule upon which it was closely modeled, the Maine rule does not so much authorize as recognize that plea negotiations and agreements are an integral part of the administration of criminal justice. *See* Fed.R.Crim.P. 11 advisory committee's note to 1975 amend., 62 F.R.D. 280–81. Rule 11 of the Maine Rules of Criminal Procedure simply establishes the procedure for the handling of pleas and plea agreements in the Superior Court. Rule 11 does not limit application of the rule of inadmissibility embodied in M.R.Evid. 410, which does not mention attorneys at all, to discussions involving an attorney for the State.[5]

---

3. Of course the fact that a law enforcement officer is not an attorney for the prosecuting authority may itself be one of the objective circumstances taken into account when the trial court is deciding whether plea negotiations were taking place. *See, e.g., State v. McBride*, 357 N.W.2d 395, 396–97 (Minn.App.1984) (defendant knew or should have known the police officer who reads *Miranda* rights is not in a position to negotiate the level of criminal charges against an accused); *Haynes v. Commonwealth*, 657 S.W.2d 948, 951 (Ky.1983) (accused could not have been misled into believing he was actually negotiating a deal with police when he made incriminating statements).

4. *See, e.g., Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *see also State v. Caouette*, 446 A.2d 1120 (Me.1982).

5. We note that other states which, like Maine, have substantially adopted the Federal Rules of Criminal Procedure and Rules of Evidence have nonetheless declined to construe them by the per se standard now employed in federal courts and have instead used the *Robertson* analysis. *See, e.g., State v. Dornbusch*, 384 N.W.2d 682, 684–85 (S.D.1986); *Williams v. State*, 491 A.2d

The entry must be:

Judgment affirmed.

NICHOLS and SCOLNIK, JJ., concur.

WATHEN, Justice, concurring separately.

I concur in the result reached by the Court but I would not construe the words "plea negotiations" or "plea discussions" as including discussions between a defendant and a police officer. Only a prosecuting attorney has the authority to enter into a plea agreement. Discussions with a police officer may be subject to suppression on other grounds, but protected discussions concerning a plea agreement can take place only with a prosecuting attorney. By rule we have authorized plea agreements in the following terms: "The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement . . . ." M.R.Crim.P. 11(e)(1). I have no trouble in concluding that the declarations of inadmissibility set forth in M.R.Crim.P. 11(e)(5) and M.R.Evid. 410 refer only to discussions with an attorney for the state. I see no reason to repeat the error committed by the federal courts in adopting a liberal construction of the existing rule and thereby create the necessity for an amendment to the rule. The *Robertson* approach, now adopted by this Court, prompted an amendment of the federal rules to explicitly provide that only discussions with a government attorney are inadmissible. *See,* Fed.R.Evid. 410(4) and Fed.R.Crim.P. 11(e)(1). In my opinion, such a circuitous route to the appropriate result is totally unnecessary.

1129, 1132 (Del.Super.1985), *cert. denied,* — U.S. —, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985); *McKenna v. State,* 101 Nev. 338, 705 P.2d 614, 618–19 (1985) (per curiam), *cert. denied,* — U.S. —, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *State v. McBride,* 357 N.W.2d 395, 396–97 (Minn.App. 1984); *Blackwell v. State,* 663 P.2d 12, 15 (Okla. Crim.App.1983); *State v. Taylor,* 336 N.W.2d

721, 726 (Iowa 1983); *Anderson v. State,* 420 So.2d 574, 577 (Fla.1982) (per curiam); *People v. Oliver,* 111 Mich.App. 734, 753–57, 314 N.W.2d 740, 750–51 (1981); *People v. Friedman,* 79 Ill.2d 341, 351–54, 38 Ill.Dec. 141, 147–48, 403 N.E.2d 229, 235–36 (1980); *see also Commonwealth v. Calloway,* 313 Pa.Super. 173, 184–85, 459 A.2d 795, 800–01 (1983) (common law).