**Gardell STARNES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

April 1, 1980.

Jack Emory Farley, Public Advocate, M. Gail Robinson, Erwin W. Lewis, Asst. Public Advocates, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., C. David Clauss, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Gardell Starnes was tried and convicted on two counts of burglary in the first degree, KRS 511.020. He was sentenced to consecutive ten-year prison terms. Starnes appeals his conviction. We affirm.

Starnes was charged with burglary of the dwelling of Floyd Carter, Jr., and Count 2, the burglary of the dwelling of Walter Smith.

The principal argument made by Starnes is directed to Count 2 of the indictment, charging burglary of the Smith dwelling.

The evidence developed at the trial was that the Smiths were in the process of moving all their belongings from the house and were staying at a new house the night of the burglary. The next day the Smiths discovered the burglary and that various articles of personal property were missing. At least some of the personal property was traced to Starnes, which resulted in his indictment and conviction of first degree burglary. The sufficiency of the evidence of the intrusion is not argued on this appeal.

Starnes asserts that the burglarized house was not a "dwelling" within the meaning of KRS 511.020 and the definition section of KRS 511.010(2), and thus his conviction of first degree burglary on Count 2 must be reversed.

KRS 511.010(2) reads, " 'Dwelling' means a building which is usually occupied by a person lodging therein."

The pertinent portion of KRS 511.020 reads as follows:

"(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully;

(a) In a dwelling."

The aggravating factor elevating this incident to first degree burglary is that the intrusion occurred at night.

Starnes asserts that on the night of the burglary the Smiths were staying at the new address and that no one "lodged therein" at the burglarized address within the meaning of the statute.

This is a case of first impression. We have thus far not had occasion to construe KRS 511.010(2). We are of the opinion that the assertion by Starnes is too restrictive and does not reflect legislative intent.

We conclude that the operative word in this definition is "usually."

"Usually" is defined in *Webster's New International Dictionary*, second edition, as "Such as in common use; such as occurs in ordinary practice, or the ordinary course of events; customary; ordinary; habitual. · · ·"

The question to be answered in this case is, had this residential property ceased to be a dwelling as defined by KRS 511.010(2)?

By the terms of the definition there cannot be a precise answer to this problem which must arise as it has here. Before the Smiths began to move to their new house there can be no question that the house was a "dwelling." It follows that at some time after they moved out the house would cease to be "usually occupied." We are of the opinion the definition must be read as a whole, and the fact the Smiths were in the process of moving and did not stay in the house the night of the burglary did not

affect the status of the house as being "usually occupied by a person lodging therein." While we can say on these facts that the burglarized home had not ceased to be a "dwelling," we do not express an opinion at what point in or after the moving process the house would cease to be "usually occupied."

The other assertions of error are either not preserved for appellate review or are without merit.

The judgment is affirmed.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., sitting; all concur.