Terry Dean HAYNES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

and

COMMONWEALTH of Kentucky,
Cross-Appellant,

v.

Terry Dean HAYNES, Cross-Appellee.

Supreme Court of Kentucky.

Oct. 12, 1983:

Steven L. Beshear, Atty. Gen., David K. Martin, Asst. Atty. Gen., Frankfort, for appellant and cross-appellee.

Jack Emory Farley, Public Advocate, Donna Boyce Proctor, Asst. Public Advocate, Frankfort, for appellee and cross-appellant.

AKER, Justice.

This is a direct appeal of appellant's convictions in Pike Circuit Court on two counts of third-degree burglary, one count of first-degree burglary, and three counts of second-degree arson, for which the appellant received sentences totaling fifty years, twenty of which were ordered to run consecutively for a total sentence of thirty years. The Commonwealth also filed a cross-appeal claiming certain evidence was erroneously suppressed. On the basis of our review of the briefs and record in this case we affirm the judgment of the Pike Circuit Court and, as a consequence, will not reach the merits of the Commonwealth's cross-appeal.

On the night of March 14, and early morning hours of March 15, 1980, a number of buildings in Elkhorn City in Pike County were broken into and set on fire, including Peoples Grocery, the Elkhorn Medical Center, and a house belonging to the heirs of Lundy Elswick.

The appellant was arrested for public intoxication near the scene of the last break-in and fire when a deputy sheriff, who had been dispatched to assist with traffic problems resulting from the fire, noticed the appellant by the side of the road, holding a lunch pail from which money had spilled onto the roadway. In May of 1980, after being formally charged with burglary and arson, the appellant escaped from jail. He was eventually located and extradited from West Virginia in February of 1982.

On the trip back from West Virginia, the appellant told officers accompanying him that he was guilty and that he just wanted to plead guilty, get it over with and return to West Virginia where he was serving a sentence on unrelated charges.

As stated above, the appellant was, in due course, tried and convicted in Pike Circuit Court of three counts of burglary and the counts of arson. This appeal followed.

The appellant raises four assignments of error on appeal which will be discussed individually below.

The first issue raised concerns the trial court's denial of appellant's motion, pursuant to RCr 7.26, for a written report made by a witness. Prior to the testimony of Detective Phipps, the primary investigating officer in the case, appellant's counsel moved for production of any statement or written report made by the witness. The

trial court held that the detective's investigative report was his "work product," and therefore, the defense was not entitled to examine it.

RCr 7.26 provides:

(1) Before a witness called by the Commonwealth testifies on direct examination the attorney for the Commonwealth shall produce any statement of the witness in the form of a document or recording in its possession which relates to the subject matter of the witness's testimony and which (a) has been signed or initialed by him or (b) is or purports to be a substantially verbatim statement made by him. Such statement shall be made available for examination and use by the defendant.

The investigation report prepared by Detective Phipps was signed by him and clearly related to the subject matter of his testimony. Furthermore, case law makes clear that law enforcement officer's investigative reports are within the purview of RCr 7.26 and that there is no generic work product exception for such investigative reports. *LeGrande v. Commonwealth,* Ky., 494 S.W.2d 726 (1973); *Maynard v. Commonwealth,* Ky., 497 S.W.2d 567 (1973); *Gaston v. Commonwealth,* Ky., 533 S.W.2d 533 (1976). Therefore, as the Commonwealth concedes in its brief, the trial court was clearly in error in denying the appellant's motion for production of the written report.

However, under Kentucky case law there remains the question of whether the trial court's erroneous failure to compel production entitles the appellant to any relief. In *Maynard v. Commonwealth, supra,* at 570, a case involving a similar error, this court stated:

RCr 9.24 provides however that errors which do not affect substantial rights shall be disregarded. We must therefore determine whether the error was prejudicial.

The appellant was prejudiced if as a result of the error, he was denied access to information which, had he possessed it, would have enabled him to contradict or impeach the witness or established some other fact which might reasonably have altered the verdict.

The appellant argues that only trial counsel can determine what use he might have made of this report had it been produced, and therefore we should presume prejudice from the error. This argument was specifically rejected in *Maynard,* p. 570.

Unlike the Maynard case, this court does have before it the police report in question and can reach a determination as to whether the failure to produce the report was prejudicial.

The appellant alleges that the report contains evidence that contradicts testimony given at trial by prosecution witnesses, but he does not specify what that contradictory evidence is or how it might have reasonably altered the verdict. This court is not able to find such evidence.

It is also contended that the report contains exculpatory evidence indicating that appellant was under the influence of drugs at the time the offenses were committed. This evidence, that appellant was in some way intoxicated, was referred to at trial on a number of different occasions. Melvin Salyers testified concerning his initial arrest of appellant for public intoxication (TE, p. 178 & 172). Both Barry McKenzie (TE, p. 23) and Detective Phipps (TE, p. 291) testified that the appellant told them that he committed the crimes while he was on drugs. The appellant had ample knowledge of and opportunity to develop this fact at trial. The evidence in the police report adds nothing to the statements made by the police officers at trial.

Although it was error for the trial court to deny the appellant access to Detective Phipps' police report, this error was not prejudicial since the report would not have established some other fact which might reasonably have altered the verdict.

The second issue raised by appellant is the trial court's refusal to suppress appel-

lant's oral statements to Phipps and McKenzie on their trip back from West Virginia. Appellant contends that the statements should have been suppressed for two reasons. The statements were made by the appellant in the context of plea bargaining with the officers, and therefore not admissible at trial. Secondly, his Sixth Amendment right to the assistance of counsel was abridged because these statements were made in the absence of his appointed counsel.

Officers McKenzie and Phipps picked up Terry Dean Haynes at the Moundsville Penitentiary in West Virginia after his extradition hearing on February 22, 1982. Detective McKenzie advised him of his rights when he was turned over to them at the penitentiary and again when they got into the car for the trip back to Kentucky. McKenzie stated to Haynes that he was not going to interrogate him because they had enough evidence against him, and if the appellant did say something to incriminate himself, it would be used against him [TE, pp. 28–29]. A half-hour to an hour into the trip, the appellant initiated a conversation by asking if he could plea bargain to the charges. The appellant then proceeded to talk about the charges against him stating, "that the reason he done these things at Elkhorn City, the charges that were brought against him, was because he was under the influence of drugs and when he was not on drugs he was a pretty good fellow." [TE, p. 36]. At no time did the officers question him about the charges pending against him in Elkhorn City.

■ The contention that the incriminating statements of the appellant were made as part of plea bargaining is not supported by the record. Officer McKenzie testified that after the appellant asked whether or not he could plea bargain, he told him that plea negotiations were not his job, that the appellant had to get in touch with the Commonwealth's Attorney, and that he could do that through his attorney (TE, pp. 31, 32). This seemed to be the total extent of the conversation about plea bargaining, and the issue was not raised again during the trip. The appellant could not have been misled into believing that he was actually negotiating a deal with the officers when he made the incriminating statements.

The appellant relies on the cases of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) to support his position that his oral confession should have been suppressed because counsel was not present when it was made. Factually those cases are easily distinguishable from our own. In *Massiah* the police surreptitiously taped a conversation between co-defendants after both were indicted, and in *Brewer* the defendant confessed after a police officer had given him the now famous "Christian burial speech."

In the present case the trial court found that the statements "were made voluntarily after being advised of his rights without any solicitation" (TE, p. 78). The trial judge's ruling is supported by substantial evidence, which makes it conclusive as to the facts, RCr 9.78.

The facts in the present case are constitutionally indistinguishable from those presented in *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), in which the Supreme Court clarified their opinion in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The court in *Oregon v. Bradshaw, supra,* quoting *Edwards* stated that the question to be asked after the accused himself initiates communication with the police is:

... whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities. *Edwards v. Arizona,* 451 U.S. at 486, n. 9, 101 S.Ct. at 1885, n. 9.

■ The appellant was twice read his *Miranda* rights after he was put in the custody of Officers McKenzie and Phipps. They did not initiate any conversation with him while in the car, but it was he who began talking about plea bargaining and his past crimes. The trial court's finding that the statements of the appellant were voluntary and without solicitation supports the conclusion that the statements were made knowingly and intelligently by the appellant. The trial court did not violate the appellant's right to counsel by admitting into evidence his oral confession.

The third issue raised by the appellant concerns the meaning of the word "dwelling" as defined in KRS 511.010 as it relates to KRS 511.020, Burglary in the first degree.

The house in question belonged to the heirs of Lundy Elswick, who had died in October of 1979. His wife lived in the house until her death in January of 1980. After that, the house was occupied for a day or two at a time by John Elswick when he visited Elkhorn City (TE, p. 158). The house was not occupied on March 15, 1980 when the break-in occurred.

This case was tried under the 1978 revision of KRS 511.020, which states in pertinent part:

A person is guilty of burglary in the first degree when with the intent to commit a crime, he knowingly enters or remains unlawfully:

(a) in a dwelling;

KRS 511.010(2) states that:

"Dwelling" means a building which is usually occupied by a person lodging therein.

The appellant contends that since the house was unoccupied on the night in question and was only occupied sporadically during the previous two months, no one "lodged therein" or "usually occupied" the house.

The most recent case to construe these statutes was *Starnes v. Commonwealth*, Ky., 597 S.W.2d 614 (1980). In that case, the court affirmed a first-degree burglary conviction where the unlawful entry occurred while the former residents were in the process of moving out. They had stayed at another house on the night of the burglary. The court upheld the conviction and expressly declined to speculate at what point "in or after the moving process the house would cease to be 'usually occupied.'"

In that case the court quoted the definition of "usually" from *Webster's New International Dictionary*, second edition, "Such as in common use; such as occurs in ordinary practice, or the ordinary course of events; customary; ordinary; habitual...."

■ From the facts in this case it is clear that although the house was not occupied by John Elswick as frequently as it had been in the past, the house was used by him as it had customarily been used, as a dwelling. We are not dealing in the present case with the issue upon which the court in *Starnes* declined to speculate. At no time was this house, after the death of Mrs. Elswick, abandoned or totally empty as contemplated in the Starnes case where a family has moved out. Therefore the appellant was properly convicted under KRS 511.020 for burglarizing a dwelling.

The last issue raised by the appellant concerns alleged improper comments by the prosecutor during closing argument.

The comments in question are as follows:

(1) Nobody gave him permission to go in there and set this house on fire. You tell me what evidence was put on here today by the defense to contradict Judge Elswick when he said that this man had no permission to be in there. MR. BISHOP: Objection, Your Honor. THE COURT: Overruled (TE 336).

\*     \*     \*     \*     \*     \*

(2) All this stuff, "you would have heard this from the witness stand if they had had it", and "you would have heard this

from the witness stand if they had had it". We have put on evidence here. What evidence did you hear from the defense that contradicts the evidence that we have put on?

MR. BISHOP: Object, Your Honor.

THE COURT: Overruled.

MR. SCOTT: They can pick all they want but the evidence that was testified to from right here, won't contradict it (TE 340).

\* \* \* \* \* \*

That man right there, that man right there and myself spent a lot of time on this case. You all didn't put it together, we did. We selected what items to put in here. There were two other boxes over that at one time that I could have used. There was a lot of stuff that I could have used, but I put on my case and you all told me that you would decide this case from the witness stand. But, again and again, time and time again, it is the same argument; "why didn't they do this", and to suggest to you that we didn't, or that it would have been in their favor. Since they didn't testify to the points they have talked about and argued ...

THE COURT: Approach the bench, gentlemen (TE 340–341).

The appellant contends that these comments violate his right against self-incrimination as embodied in the Fifth Amendment of the United States Constitution, Section 11 of the Kentucky Constitution and also KRS 421.225 which states:

In any criminal or penal prosecution the defendant, on his own request, shall be allowed to testify in his own behalf, but his failure to do so shall not be commented upon or create any presumption against him.

The appellant argues that the above-listed comments by the prosecutor unnecessarily called the jury's attention to the fact that appellant failed to testify and, further, suggested that appellant had a need to testify to rebut the prosecution's evidence.

■ The first two comments made by the prosecutor to which there was an objection did not directly refer to the appellant's failure to testify. They only refer to the fact that the defense did not put on any witnesses at all. Argument that a defendant has failed to contradict the prosecutor's evidence has been upheld as a proper form of argument. *Williams v. Commonwealth,* Ky., 464 S.W.2d 244 (1971), remanded in light of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See also *Anderson v. Commonwealth,* Ky., 353 S.W.2d 381 (1962), cert. den., 369 U.S. 829, 82 S.Ct. 847, 7 L.Ed.2d 795. The comments by the prosecutor did not refer to the appellant's failure to testify so they were a proper form of argument.

■ The third comment by the prosecutor objected to by the appellant comes close to being a direct reference to an accused's failure to testify. It should be noted, though, that the trial court interrupted the prosecutor after the comment was made, and there was no further elaboration on that issue after a discussion at the bench. This court has found that even direct references to a defendant's failure to testify can be harmless error. *Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972). The comments in the present case fall short of those in the cited case. This court is convinced, considering the overwhelming evidence against the appellant, the comments by the prosecutor were at the most, harmless error and did not contribute to the appellant's conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment of the trial court is affirmed.

All concur.