Robert SHACKELFORD, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 86–CA–2101–MR.

Court of Appeals of Kentucky.

Jan. 8, 1988.

Rehearing Denied June 17, 1988.

Discretionary Review Denied by Supreme
Court Sept. 28, 1988.

Kathleen Chambers, Ellen Longshore, Newport, for appellant.

David L. Armstrong, Atty. Gen., Mary James Young, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, C.J., and COMBS and WEST, JJ.

HOWERTON, Chief Judge.

Robert Shackelford appeals from a judgment of the Campbell Circuit Court based on a jury verdict finding him guilty of second-degree burglary. On appeal, Shackelford claims that the evidence at trial fails to support the jury finding that he entered a dwelling house. We agree and therefore reverse and remand.

On March 28, 1986, at approximately 7:30 p.m., Shackelford and two others entered a house owned by Virginia Gross which had been recently damaged by a tornado. The house had previously been Mrs. Gross's residence, but a tornado had blown off the third floor of the house and had left a two-and-one-half foot crack on its south side. Mrs. Gross had originally intended to repair the house but determined the cost prohibitive and had received a permit to have the house demolished. The city condemned the structure and allowed entry only by permit, which allowed entrance to condemned structures only between the hours of 6:00 a.m. and 6:00 p.m. Shackelford and his companions took a dresser out of the house and were apprehended by the police in the front yard. At trial, the jury returned a verdict of second-degree burglary against Shackelford.

On appeal, Shackelford contends that the evidence does not support a finding of second-degree burglary. Under KRS 511.030 "[a] person is guilty of burglary in the second degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling." "Dwelling" is defined by KRS 511.010 as meaning "a building which is usually occupied by a person lodging therein." Shackelford argues that Mrs. Gross's house was no longer a dwelling within the statute's meaning at the time he entered it. We agree.

There can be no question that before the tornado struck, Mrs. Gross's house was a dwelling. However, the house must have continued to be a dwelling at the time Shackelford and the others entered it. As previously stated, KRS 511.010(2) requires usual occupation by a person lodging therein for a structure to constitute a dwelling. As stated in *Starnes v. Commonwealth*,

Ky., 597 S.W.2d 614, 615 (1980), "usually" means "[s]uch as in common use; such as occurs in ordinary practice, or the ordinary course of events...." In *Starnes*, a family was moving out of a home when someone broke in and stole some of their personal property. The family had spent the night in their new home. The court found their old home still constituted a dwelling. The court found that the home was usually occupied at the time of the break-in. We have a different situation in the case before us. Mrs. Gross's home had been irreparably damaged by a tornado. The house was uninhabitable and scheduled for demolition. The house simply was not fit for usual occupation by a person lodging therein. The court in *Litton v. Commonwealth*, Ky., 597 S.W.2d 616, 617 (1980), noted that according to the 1971 commentary to the penal code the legislature intended burglary to be "designed to encompass all unlawful intrusions which are accompanied by alarm and danger to occupants." Here, there could be no such alarm or danger. No one, not even the owner, was permitted in the house beyond 6:00 p.m. Shackelford did not enter the house until 7:30 p.m. We do not say that Shackelford is not guilty of a lesser or other theft offense; all we now hold is that the house he entered was not a dwelling within the meaning of KRS 511.-030. Therefore, Shackelford cannot be guilty of second-degree burglary.

The judgment of the Campbell Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

All concur.