# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0534-MR

KEITH KUZYK                                             APPELLANT

V.                 ON APPEAL FROM CHRISTIAN CIRCUIT COURT
HONORABLE JOHN L. ADKINS, JUDGE
NO. 19-CR-00258

COMMONWEALTH OF KENTUCKY                            APPELLEE

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Keith Allen Kuzyk was convicted by a circuit court jury of attempted murder, first-degree wanton endangerment, theft by unlawful taking over $10,000.00, first-degree fleeing and evading, and of being a second-degree persistent felony offender, but was acquitted of receiving stolen property. He was sentenced to life in prison. Kuzyk now appeals his conviction as a matter of right, asserting prosecutorial misconduct, improper denial of a directed verdict on the charge of first-degree wanton endangerment, denial of his right to confrontation of the author of a ballistics report, and a deficient instruction on the second-degree persistent felony offender (PFO-2) instruction. We affirm his conviction and sentence.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 18, 2019, Autumn Neblett arrived at her sister September Neblett's residence in Clarksville, Tennessee, in a black Dodge truck with Kuzyk. While September and Autumn denied knowledge at the time, this vehicle had already been reported stolen. September got in the truck with Autumn and Kuzyk and the three then drove and picked up a mutual friend, Anthony Johnson. The four then traveled to the Hopkinsville Walmart where Kuzyk and Johnson stole a white Chevrolet Tahoe.

Johnson drove the Chevrolet (with Kuzyk as his passenger) and Autumn drove the Dodge (with September as her passenger) to the nearby Square Deal gas station. While there, Kuzyk and Johnson disabled accessory lights that were beneath and on the wheels of the Chevrolet which had caused it to be both distinctive and quite visible. This activity was reflected on surveillance footage.

Leaving Square Deal, Johnson drove the Chevrolet (with September as his passenger) and Kuzyk drove away in the Dodge (with Autumn as his passenger).

Johnson and September were subsequently spotted by law enforcement in the Chevrolet which had been reported stolen. They escaped but the Chevrolet was later found abandoned in Clarksville, Tennessee. September was arrested shortly thereafter.

That night, Officer Jeremy Davidson spotted the Dodge, with a male in the driver's seat, in a parking lot in Hopkinsville. After Officer Davidson turned

on his lights and siren, the Dodge departed at a high rate of speed and ran stop signs and traffic lights in an attempt to evade Officer Davidson's pursuit.

Deputy Sheriff Jack Rowland responded to Officer Davidson's radio calls and witnessed the pursuit approaching his location. As he moved to deploy spike strips, Deputy Rowland witnessed the Dodge cross the center line of the road and approach him. This was also captured on Officer Davidson's dash cam. The Dodge ran over a spike strip but continued fleeing.

Officer Davidson drew close to the Dodge and began to hear bullets impacting his patrol car. Officer Davidson was struck in the shoulder. Realizing he was hit, Officer Davidson turned his car toward the side of the road and, while shooting from the Dodge continued, was struck in the back of the head by another bullet. Evidence presented at trial showed that at least eleven rounds had been fired towards Officer Davidson.

Deputy Rowland transported Officer Davidson to the local hospital where a CAT scan found bleeding in Officer Davidson's brain.

Autumn testified she had ingested Benadryl after previously taking methamphetamine and had fallen asleep in the Dodge, only awakening when she heard gunshots and then witnessed Kuzyk driving the Dodge with one hand while firing an AR-15 semi-automatic rifle out the back window with the other. After the pursuit ended, Kuzyk abandoned the Dodge, taking the AR-15 with him. He and Autumn travelled by foot to a nearby baseball field. Autumn remained in a dugout at the baseball field and claimed to fall back asleep there until police arrived to find only her along with the AR-15.

Kuzyk then stole a Ford Explorer from a Waffle House parking lot. Eventually, law enforcement was able to use the owner's cell phone to locate the Ford in Clarksville, Tennessee. This resulted in yet another pursuit where police used spike strips. This time they apprehended Kuzyk.

At his trial, Kuzyk neither testified nor called any witnesses, relying instead upon the cross-examination of the Commonwealth's own witnesses as his defense to the charges against him.

The Christian County jury found Kuzyk guilty of the attempted murder of Officer Davidson, theft by unlawful taking over $10,000.00, first-degree fleeing or evading, first-degree wanton endangerment for swerving at Deputy Rowland, and being a PFO-2. The jury recommended a life sentence which was imposed by the trial court.

## II. ANALYSIS

### A. The Trial Was Not Tainted by Prosecutorial Misconduct. – Unpreserved

Kuzyk argues he was denied a fair trial due to "flagrant" prosecutorial misconduct found in the prosecutor's opening statement, during both the guilt phase and penalty phase closing arguments, and multiple instances of leading questions being used in witness questioning. Recognizing that all but two of his thirteen alleged errors are unpreserved, Kuzyk specifically seeks redress under the manifest injustice standard set forth in Kentucky Rules of Criminal Procedure (RCr) 10.26 which provides as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or

preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

This is a stringent standard.

> An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court determines that it has resulted in a manifest injustice, unless, in other words, the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking," or jurisprudentially intolerable.

*Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009).

> For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." A palpable error "must involve prejudice more egregious than that occurring in reversible error[.]" A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal citations omitted).

Finally, in reviewing allegations of prosecutorial misconduct, appellate courts are to focus "on the overall fairness of the trial," reversing only if the misconduct was "so serious as to render the entire trial fundamentally unfair." *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004).

### 1. Comments Made by the Commonwealth During its Opening Statement and Both His Guilt Phase and Penalty Phase Closing Arguments Were Harmless. - Unpreserved

With the above standards in mind, we will first assess the statements made by the Commonwealth during its opening statement, its guilt phase closing argument, and its penalty phase closing argument. Kuzyk alleges that

statements made by the Commonwealth in each of the three contained

impermissible opinions and legal arguments.

As both the rules and standards of review are distinct for each category

of statements, we will address them separately.

### a. The Commonwealth's Opening Statement

Kuzyk argues that the following instances of improper argumentation

during the Commonwealth's opening statement require a new trial:

> The pursuit of Kuzyk by the officers was "one of the most
> conscientious pursuits I've ever seen."
> . . . .
>
> Again, we got wanton endangerment for Jack Rowland at that
> point, we've got, now attempted murder for the multiple shots that
> had been fired directly at Officer Davidson, trying to disable, trying
> to take him out, when I say take him out, I'm talking about trying
> to kill him so that he can no longer pursue.
> . . . .
>
> Thank God, he actually was leaning forward because if his head
> would have been back where it normally would when he was
> driving it would have went in the side, not in the back, it would
> have went dead in the side of his head and like the doctors told
> him, just a couple of millimeters difference they wouldn't be having
> the conversation.
> . . . .
>
> When it comes time to bring your verdict, you will be given an
> instruction of what a serious injury is, what is a serious physical
> injury, and it includes disfigurement, it includes prolonged loss of
> use and I believe that once you hear from Jeremy himself as well
> as the doctors that are going to testify, one of these wounds at
> least will qualify as a serious physical injury for the assault first
> degree charge. When you look at physical injury versus serious
> physical injury, physical injury is typically a domestic violence,
> smack somebody in the face, hit somebody, punch them, that's
> your typical physical injury. Serious injury is next step up.

RCr 9.42(a) requires the prosecutor in his opening statement to "state to the jury the nature of the charge and the evidence upon which the Commonwealth relies to support it." Likewise, under RCr 9.42(b), the defendant in his opening statement "may state the defense and the evidence upon which the defendant relies to support it . . . ."

Thus, "it is never proper in an opening statement for counsel to argue the case or to give his personal opinions or inferences from the facts he expects to prove." *Turner v. Commonwealth*, 240 S.W.2d 80, 81 (Ky. 1951).

In layman's terms, the parties are confined in their opening statements to providing a "roadmap" to the jury of the issues it will be deciding and the evidence the parties expect to provide the jury during the trial to resolve those issues. There is no leeway granted to either party under our rules to use their opening statements to argue, offer opinions, or offer their own inferences to be drawn from evidence they have yet to present.

The Commonwealth's Attorney ventured into offering his opinion and making improper arguments during his opening statement—arguments which should have been left for his closing argument. The Commonwealth Attorney's *opinions* as to the pursuit of Kuzyk, Kuzyk's attempt to kill the officer, and how the officer's positioning affected his wound, were not previews of the evidence the Commonwealth would later present, but opinions as to the conclusions that the jury should reach based on as-of-yet unsubmitted evidence.

However, because Kuzyk failed to object, he is required to now show how the statements were more than simple error, but actually affected the outcome

of his trial. While noting the objectionable statements made by the Commonwealth, Kuzyk has failed to establish that, in the overall context of his trial, that the Commonwealth's statements had any impact on the jury's verdict. Therefore, we determine that while the Commonwealth's statements were objectionable, they were harmless error and otherwise do not rise to the level of palpable error.

### b. The Commonwealth's Guilt Phase Closing Argument

Kuzyk argues that the Commonwealth's Attorney made impermissible statements designed only to "engender sympathy for the victim and his or her family" during his guilt phase closing argument. He relies on *Bennett v. Commonwealth*, 978 S.W.2d 322 (Ky. 1998), for support of this proposition. He also argues the Commonwealth's Attorney made improper comments relative to Kuzyk not taking the stand in his own defense.

In criminal trials, the Commonwealth's closing argument is its final opportunity to address the jury prior to it determining a defendant's guilt. The Commonwealth may both restate the evidence it presented during the trial and now argue for the inferences and conclusions that may be drawn from such evidence. Attorneys are allowed great latitude in their closing arguments. *Slaughter v. Commonwealth*, 744 S.W.2d 407 (Ky. 1987). However, no new evidence or information may be submitted to the jury which was not previously provided either by the court or the parties.

We only reverse for prosecutorial misconduct in a closing argument if the misconduct was "flagrant" or if each of the following are satisfied: (1) proof of

defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with sufficient admonishment." *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002). Kuzyk does not dispute that element (2) is not satisfied and we do not consider the Commonwealth's remarks here to rise to the level of "flagrant" as defined in *Brafman v. Commonwealth*, 612 S.W.3d 850 (Ky. 2020).

The first statement cited as misconduct by Kuzyk was as follows:

> This case about [Officer Davidson], and him doing his job and a badge that has blood on it. His blood. For doing his job. I want the person who did this to be held accountable. Justice deserves it. To him and his family This isn't a game you play, I was there, I wasn't there. Who's this? Who's that? This is a life we're talking about. A life of a person with a wife and children.

We do not find the statement in this argument to be improper. In *Bennett*, the victim's mother was called to the stand for the purpose of "humanizing" the victim and we noted that "[t]he introduction by the prosecution of 'a certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime.'" *Id.* at 325 (citations omitted). In *Bennett* we ultimately determined that the mother's statements did not deny the defendant a fair trial and found the admission of that evidence to have been harmless error. Here, we come to the same conclusion.

The Commonwealth's Attorney also made the following allegedly improper comments during his guilt phase closing relative to Kuzyk not taking the stand in his own defense:

> When you look at your instructions, the defendant has a right to remain silent. Absolutely. But when the Commonwealth rested,

what did the Judge ask? Does the defendant want to put on any defense? Does the defendant want to call Anthony Johnson? Does the defendant want to a call anybody? No. So they want to say "you didn't get to hear from Anthony Johnson, you didn't hear from all these other people" but they had the opportunity. There's no burden on them to do it, but if they're going to exonerate his client, then why wouldn't they be here? Why wouldn't they? If they know they're going say something that's going to prove his innocence, then why wouldn't they be here? Easy answer is because he's guilty.

The Commonwealth's Attorney should not have made any comment on Kuzyk remaining silent or not taking the stand in his own defense. We caution all counsel to avoid such commentary for obvious reasons. There is no doubt that commenting on a defendant's right to remain silent is forbidden and that it is of constitutional magnitude.

The Fifth Amendment of the U.S. Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." In *Griffin v. California,* 380 U.S. 609 (1965), the U.S. Supreme Court held that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 614; *see* KRE 511(a).

Without condoning discussion of Kuzyk's decision to remain silent, we do not believe that the statements made here were so improper as to be considered flagrant or palpable and instead were "harmless beyond a reasonable doubt" in this instance. *See Chapman v. California,* 386 U.S. 18, 26 (1967).

In making our determination, we must also note that the prosecutor's statement acknowledged that Kuzyk's was "absolutely" entitled to remain silent

and that the trial court also verbalized that right to the jury prior to its deliberation together with the prohibition against any negative inference being drawn from such. That admonition was within Jury Instruction Number Four which was also tendered in written form to the jury. Further instruction included reference to the burden of proof being with the Commonwealth. Therefore, the Commonwealth's comment did not add to what the jury already knew: Kuzyk had a right to refuse to testify, he exercised that right, and such a choice could not be used as evidence of his guilt.

Just prior to the Commonwealth's closing argument, counsel for Kuzyk made repeated references to the Commonwealth not calling Johnson as a witness. Defense counsel made those statements because a significant part of its defense was that Johnson could have been the one driving the Dodge and could have shot Officer Davidson. In this present matter, the prosecutor was similarly noting Kuzyk's own failure to call Johnson as a witness. Thus, it was Kuzyk's counsel who determined to bring up the issue of Johnson's absence and the Commonwealth permissibly called attention to the fact that Kuzyk too could have called Johnson to testify but did not. This Court has previously determined "[a]rgument that a defendant had failed to contradict the prosecutor's evidence has been upheld as a proper form of argument." *Murphy v Commonwealth,* 509 S.W.3d 34, 53 (Ky. 2017) (quoting *Haynes v Commonwealth,* 657 S.W.2d 948, 953 (Ky. 1983)).

While we must again strongly caution prosecutors to avoid any statements regarding a defendant's right to remain silent and to not testify,

there is no manifest injustice or any substantial possibility that the Commonwealth's argument seriously affected the overall fairness of the proceedings. Thus, we decline to find that the Commonwealth's comments rise to the level of being flagrant or palpable error.

### c. The Commonwealth's Penalty Phase Closing Argument

Finally, Kuzyk alleges that statements made by the Commonwealth during the penalty-phase of the trial contained elements of the prosecutor testifying as a witness himself and contained impermissible misstatements of law regarding the sentence that Kuzyk would serve in prison.

Our Commonwealth's truth-in-sentencing statute, *i.e.*, KRS 532.055(2)(a)(1)-(6), lists several categories of evidence that "may be offered by the Commonwealth relevant to sentencing" including minimum parole eligibility and the maximum expiration of sentence as determined by the division of probation and parole for all such current and prior offenses. Even then, the list provided by that statute is illustrative, not exhaustive. *Cornelison v. Commonwealth*, 990 S.W.2d 609, 610 (Ky. 1999). It "does not exclude other possibly relevant evidence." *Garrison v. Commonwealth*, 338 S.W.3d 257, 260 (Ky. 2011).

Regarding the "testifying" alleged by Kuzyk, the Commonwealth's Attorney, after going through all the presented evidence and arguing for a life sentence, stated:

> I talked to Jeremy and his wife about testifying and Jeremy said he felt confident that what I told you and argued to you would express their interest, their thoughts, and I think I

have. Jeremy swore an oath to protect this community, he almost died that night doing it. Don't let the person who almost took his life walk away.

Despite being hearsay, the only fact to which the Commonwealth's attorney "testified" was that he'd spoken to Officer Davidson and his wife. Recognizing that this alleged error was unpreserved, we must again be persuaded that the statements were "flagrant" or "palpable." Under either test, a defendant will be entitled to relief only if the prosecutor's misconduct rendered the trial fundamentally unfair. Because that standard has not been met based on these comments, we must reject Kuzyk's claim.

The Commonwealth's Attorney also stated in his penalty phase argument:

> The only way we can give the parole board what they need is to give a life sentence. Because with a life sentence, he meets the parole board at twenty years. If he goes to prison and is the model inmate, does everything like he is supposed to, he'll make parole. It sounds harsh, it sounds rough, but it puts the keys in his hand, it literally puts the keys to the prison in his own hands. If he does what he needs to do, shows that he changed, become remorseful, then he will be rewarded with parole.

The Commonwealth Attorney should not have made the representation that Kuzyk would "make parole." Despite stating that Kuzyk would need to be a model inmate to be paroled, a definitive statement that Kuzyk would be paroled if he behaved in prison was improper and inaccurate. The Commonwealth went beyond restating testimony it had put into evidence and we cannot unqualifiedly determine that he was permissibly arguing for an inference that could be drawn from that testimony. We note that the Commonwealth's

statements were made after it had already called an officer with the Department of Corrections Division of Probation and Parole to testify. This officer testified that if Kuzyk were sentenced to life in prison, he would come before the parole board at twenty years at which time it would factor Kuzyk's disciplinary record while in custody in making their determination. The parole officer further testified that Kuzyk had no guarantee that he would be released in twenty years.

On cross examination though, Kuzyk's counsel was able to highlight that there would be "no guarantee of release" at twenty years. Kuzyk's counsel also properly emphasized this in her closing argument. Therefore, upon full consideration of the statement within the overall context of the sentencing portion of the trial, we cannot find that such statement rose to the level of flagrant or palpable error.

### 2. Improper Questioning of Witnesses

Kuzyk asserts that the Commonwealth's use of leading questions during the direct examination of several witnesses was misconduct which denied him a fair trial. While offering a lengthy list of alleged instances of such conduct, Kuyzyk's counsel only objected twice during the trial with one objection being sustained with the court instructing the Commonwealth to cease and the Commonwealth correcting the questioning.

KRE 611(c) states, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony . . . ." Kentucky has historically prohibited the use of leading

questions during direct examination. Lawson, *Kentucky Evidence* § 3.20[6], at 245–46. However, even if Kuzyk had properly objected to the leading questions, "judgments will not be reversed because of leading questions unless the trial judge abused his discretion and a shocking miscarriage of justice resulted." *Tamme v. Commonwealth*, 973 S.W.2d 13, 27 (Ky. 1998).

A review of the present trial record regarding the leading questions Kuzyk alleges does not raise concern. The questioning, even when arguably leading in a purely academic sense, does not appear to have been either intentional or persistent. There were no instances where the Commonwealth's Attorney was feeding a witness facts beyond the witness' personal knowledge through leading questions and the Commonwealth's Attorney never improperly placed his credibility in issue as an unsworn witness against Kuzyk. What the Commonwealth's Attorney added to the witnesses' testimony did not lend the sort of central and necessary support to the Commonwealth's case that would be improper. *See Holt v. Commonwealth*, 219 S.W.3d 731 (Ky. 2007).

The Commonwealth's questioning in this case in singular instances, or *en toto*, did not result in any manifest injustice or overarching prejudice to Kuzyk's right to a fair trial. The Commonwealth had otherwise overwhelming evidence against Kuzyk so we are satisfied that these alleged errors, if any, were harmless.

**B. The Court Correctly Determined to Deny Kuzyk's Motion for a Directed Verdict on the Charge of First-Degree Wanton Endangerment. - Preserved**

The basis for the wanton endangerment charge was that Kuzyk swerved the Dodge toward Deputy Rowland as Rowland was deploying the spike strips. Kuzyk maintained that his conduct did not create "a substantial risk of death or serious injury" to Deputy Rowland because the Dodge only veered "slightly" over the center line, Deputy Rowland was behind his vehicle parked on the side of the road opposite the oncoming Dodge and, therefore, was well away from the Dodge. We disagree with Kuzyk that the evidence supports his interpretation given the reckless manner in which Kuzyk was driving and the proximity of Deputy Rowland to Kuzyk's vehicle as recorded on dashcam video.

In considering whether a motion for directed verdict should be granted, "[t]he trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

> If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

On appeal, the denial of a directed verdict motion is reviewed to determine whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant is entitled to a directed verdict of acquittal." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017) (quoting *Benham*, 816 S.W.2d at 187).

Kuzyk was convicted of wanton endangerment in the first degree pursuant to KRS 508.060(1) which states:

> A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person.

The term "wantonly" is defined by statute in relevant part as follows:

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

KRS 501.020(3).

In other words, "wantonness is the awareness of and conscious disregard of a risk that a reasonable person in the same situation would not have disregarded[.]" *Robertson v. Commonwealth*, 82 S.W.3d 832, 835 (Ky. 2002).

In this instance, the trial court correctly concluded that there was sufficient evidence presented in the trial to proceed to the jury and, therefore, the trial court did not err by denying Kuzyk's motion for a directed verdict of acquittal on the first-degree wanton endangerment charge.

## C. The Admission of the Ballistics Report was Harmless Error. - Unpreserved

Next, Kuzyk alleges that the trial court erred in allowing Special Agent Jay Espinola to read a ballistics report that was prepared by others at a Bureau of Alcohol Tobacco and Firearms (ATF) lab in Maryland. Kuzyk asserts

that he was deprived of his right of confrontation pursuant to the Sixth Amendment and Section 11 of the Kentucky Constitution, when the trial court allowed Agent Espinola to testify as to the contents of a ballistics report instead of mandating the appearance of the report's authors. He also argues that the report was admitted via "hearsay" since Agent Espinola had no firsthand knowledge of the testing represented by the report.

The report in question found that fired shell casings found in the Dodge (from where the AR15 was fired) matched the rifle later recovered at the baseball field. The Commonwealth seemingly concedes that the introduction of the report, via Agent Espinola, violated Kuzyk's right to cross-examine the witnesses against him. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Bruton v. United States*, 391 U.S. 123 (1968).

We agree that the admission of the ballistics report was in error. The report, being read and submitted by a party other than the author or person who conducted the underlying testing, was hearsay.

Kuzyk however recognizes that he did not preserve this argument by objecting at trial and therefore seeks palpable error review under RCr 10.26. He further acknowledges that Confrontation Clause errors are generally subject to a harmless error standard of review if the court is satisfied that the error was "harmless beyond a reasonable doubt." *Heard v. Commonwealth*, 217 S.W.3d 240, 244 (Ky. 2007).

Linking the spent shell casings found in the Dodge to the rifle found at the baseball field was wholly unnecessary to finding that Kuzyk discharged a

firearm multiple times at Officer Davidson and bullets from that firearm struck Officer Davidson. The recovery of either the rifle or the shell casings was not necessary to proving either of those two facts. The overwhelming testimony and additional evidence offered by the Commonwealth clearly established the defendant discharged a semi-automatic 5.56mm rifle at Officer Davidson at least eleven times wounding him twice.

Given its insignificant role in the Commonwealth's case as a whole, we had no trouble concluding that the report's introduction was not palpable error and was otherwise harmless.

### D. The Error in the Persistent Felony Offender Instruction was not Palpable. - Unpreserved

Lastly, Kuzyk claims that a typographical error in the jury instruction regarding the persistent felony offender (PFO) charge, while not preserved, was erroneous, presumptively prejudicial, and would warrant reversal of this conviction on an unpreserved palpable error when a manifest injustice is found. The jury instruction in question stated:

Second Degree Persistent Felony Offender

You will find the Defendant guilty of being a Second-Degree Persistent Felony Offender under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt **all of the following.**

A.     That prior to February 18, 2019, the Defendant  was convicted of the following felony:

1. Possession of a Controlled Substance, Methamphetamine by final judgment of the Todd Circuit Court (7th Judicial Circuit) on May 30, 2012; **OR**

B. That he was eighteen years of age or older when he committed the offense of which you believe he was so convicted;

C. That pursuant to said prior conviction he was sentenced to a term of imprisonment of one year or more;

D. That his parole for the Todd Circuit Court conviction expired within 5 years of the offense of which you have found him guilty in this case; AND

E. That he is now twenty-one years of age or older.

(Emphasis added).

This PFO instruction utilized the wrong alternative connector of "or" instead of the conjunction "and" found in KRS 532.080(2)[1] and therefore could have, in theory, allowed the jury to find Kuzyk guilty of being a persistent felony offender on the basis of him only being previously convicted of a felony in Todd County.

Kuzyk however cannot claim that any of the required factual elements of the statute were either not introduced or were incorrect. The Commonwealth's Attorney elicited each of the necessary elements for this offense from the Christian County Circuit Court Clerk and the Probation and Parole officer, both of whom testified during the penalty phase of the trial. None of their testimony on these elements, or the documentation underlying their testimony, were questioned or impeached by Kuzyk's counsel. In sum, given the objective

---

[1] The statute requires that to qualify as a PFO 2, the offender has to be "more than twenty-one (21) years of age **and**" have been "convicted of one (1) previous felony" with a "term of imprisonment of one (1) year or more . . . ; **and**" be "over the age of eighteen (18) years at the time the offense was committed; **and** . . . " otherwise qualify based on the recency of the conviction or supervision. (Emphasis added).

nature each of the elements of this offense, and their presence in the record, there is really no question as to whether this conviction was in error or would change on remand.

The instruction did contain an error but given the undisputed facts supporting this conviction, the error was simply not palpable and does not require a new trial.

## III.   CONCLUSION

We are confident that Kuzyk received an appropriate and fair trial and was properly convicted under the totality of the overwhelming evidence presented supporting each verdict. For the foregoing reasons, Kuzyk's convictions and the sentence imposed by the Christian Circuit Court are affirmed in all respects.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Shannon Dupree
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General