# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 15, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0474-MR

RONNIE SPARKMAN                                                     APPELLANT

V.                     ON APPEAL FROM HENRY CIRCUIT COURT
HONORABLE JERRY D. CROSBY, II, JUDGE
NO. 21-CR-00140

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Ronnie Sparkman was convicted following a jury trial in Henry Circuit Court of burglary in the first degree, criminal mischief in the first degree, and being a persistent felony offender in the second degree (PFO II). He was sentenced to forty years' imprisonment and now appeals as a matter of right.[1] We affirm.

In February 2019, Brad and Linda Puckett returned from an extended vacation of approximately twenty-seven days in Florida to find their home on Elm Street in Eminence, Kentucky, had been ransacked.[2] Numerous items

---

[1] KY. CONST. § 110(2)(b)

[2] The Pucketts built and had lived in the Elm Street home since 1982. In 2018, they inherited a home in Pleasureville, Kentucky, and had begun moving to that residence. The move was not complete and the Pucketts still occasionally occupied the Elm Street home.

had been taken from the home including jewelry, tools, and three firearms. One of the firearms was an 1800's Springfield rifle which had belonged to Brad's grandfather. During the ensuing investigation, multiple latent fingerprints were recovered from the home by an analyst from the Kentucky State Police. Subsequent analysis identified Sparkman as a match to a palm print which had been located on a bracket inside a vintage jukebox which had been pried open to gain access to the coin compartment. Items found inside the residence which were not owned by the Pucketts were sent for DNA testing; none of the items contained a sufficient DNA sample to provide a meaningful comparison.

Henry County Sheriff's Deputy Matt Cravens, accompanied by Henry County Sheriff Keith Perry, went to Sparkman's home to speak with him about the print identification. Sparkman was not at home, but his brother allowed officers to enter the residence. While there, a dog dropped a pearl necklace in front of the officers matching the description of a necklace which had been taken from the Puckett residence. Multiple pieces of costume jewelry were in plain view in the kitchen and living room. After obtaining permission from the homeowners to conduct a search of the premises, officers located even more stolen jewelry. Sparkman's truck was parked in the driveway and multiple stolen items were visible in the bed. The truck was searched pursuant to a search warrant and numerous items belonging to the Pucketts were located and inventoried. None of the nearly $50,000 worth of heirloom jewelry was recovered, but Sheriff Perry was able to determine Sparkman had sold multiple

2

pieces of jewelry for scrap value to a local pawn shop on February 14, 2019. Henry County officers were unable to locate any of Brad's three stolen guns.

In a separate and unrelated investigation, Detective Brad Pennington of the Shelbyville Police Department, conducted a traffic stop and recovered Puckett's firearms from the trunk of a car associated with a man named Larry Payton. During an interview with Payton's roommate, Keith Armstrong, Detective Pennington learned Armstrong and Payton had purchased the guns for $50 each from a man who Armstrong did not know. Sparkman's name did not come up during the investigation. The guns were ultimately returned to the Pucketts.

Sparkman was convicted of burglary in the first degree, criminal mischief in the first degree, and being a PFO II. The trial court sentenced him in accordance with the jury's recommendation of enhanced, consecutive sentences for an aggregate of forty years' imprisonment. This appeal followed.

In seeking reversal of his convictions, Sparkman raises two issues: a failure of proof connecting him to the stolen firearms entitled him to a directed verdict of acquittal on burglary in the first degree; and the trial court erred in refusing to instruct the jury on burglary in the third degree. We disagree.

Sparkman first avers the Commonwealth failed to present sufficient proof connecting him to the stolen firearms. In support, he speculates the length of time the Pucketts were away from their home made it likely more than one burglary occurred and relies on the recovery of the firearms from Payton as proof that he had no connection to the guns. Thus, in his estimation, because

3

the jury heard no direct testimony or evidence that he stole or ever had the guns in his hands, he was entitled to a directed verdict on the charge of burglary in the first degree and the trial court erred in failing to grant his motion for same.

It is well-settled that "[o]n motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). The trial court is directed to assume all of the Commonwealth's evidence is true "but reserving to the jury questions as to the credibility and weight to be given to such testimony." *Id.* "The trial court must compare the proof presented at trial with the statutory elements of the alleged offense." *Smith v. Commonwealth*, 636 S.W.3d 421, 434 (Ky. 2021) (citing *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* at 433 (quoting *Benham*, 816 S.W.2d at 187). A trial court must direct a verdict for the defendant "if the prosecution produces no more than a mere scintilla of evidence." *Benham*, 816 S.W.2d at 187-88.

Under KRS 511.020(1):

A person is guilty of burglary in the first degree when, with the intent to commit a crime, he or she knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or she or another participant in the crime:

(a) Is armed with explosives or a deadly weapon;

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

"A person may become 'armed with a deadly weapon' for the purposes of first-degree burglary when he enters a building or dwelling unarmed and subsequently steals a firearm therein." *Wilson v. Commonwealth*, 438 S.W.3d 345, 354 (Ky. 2014) (citing *Hayes v. Commonwealth*, 698 S.W.2d 827, 830 (Ky. 1985)).

We have reviewed the record and agree with Sparkman that no direct evidence tying him to the stolen guns was produced. However, purely circumstantial evidence can support a conviction if, "based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000) (citation omitted); *see also Pollini v. Commonwealth*, 172 S.W.3d 418, 432 (Ky. 2005). There is no requirement for the Commonwealth to "rule out every hypothesis except guilt beyond a reasonable doubt." *Rogers v. Commonwealth*, 315 S.W.3d 303, 311 (Ky. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

The Commonwealth produced evidence that Sparkman was in the Puckett home through the introduction of palm-print analysis showing he had touched the inside of a jukebox. Further, it was proven that Sparkman did not

5

have permission to be in the Puckett home nor was there any innocent reason for his prints to be located inside the jukebox. Numerous stolen items were located in Sparkman's bedroom and pickup truck, and he pawned gold jewelry not long after the burglary was discovered. "It is, and has always been the rule that the possession of stolen property raises a presumption that the possessor was guilty of having stolen it, but which may be rebutted by a satisfactory explanation of how he obtained the possession." *Wheeler v. Commonwealth*, 295 Ky. 28, 173 S.W.2d 817, 818 (1943). The Commonwealth also showed that three guns were taken during the burglary which were later recovered from Payton who had not stolen them but rather had purchased them for $50 each from an unknown individual.

Sparkman makes much of the length of time the residence was empty and argues any number of people could have entered the home during that time and stolen the guns. His assertion, however, is based only on speculation and supposition, as no proof of any other burglary was presented. Further, this argument goes to the weight of the evidence, and it is axiomatic that the jury is free to believe the testimony of one witness over another. *Minter v. Commonwealth*, 415 S.W.3d 614, 618 (Ky. 2013). When taken in the light most favorable to the Commonwealth, a fair and reasonable inference could be drawn from the evidence that Sparkman took the guns along with the other property later found to be in his possession, and it would not have been clearly unreasonable for the jury to find guilt. Thus, there was plainly more than sufficient evidence produced, albeit circumstantial, that a burglary occurred,

6

and that Sparkman was the culprit.  For this reason, we hold the trial court correctly denied the directed verdict motion.

Finally, Sparkman contends the trial court erred in refusing to instruct the jury on burglary in the third degree.  He claims the Pucketts were moving from and no longer living in the Elm Street house when the burglary occurred, thereby converting it from a "dwelling" to a "building" as those terms are defined in KRS 511.010.  Thus, he argues he was entitled to an instruction on burglary in the third degree as a lesser-included offense.  We disagree.

Trial courts have a duty to instruct the jury on the law of the case.  RCr[3] 9.54.  In Kentucky, "KRS 505.020(2) establishes whether a charge is a lesser-included offense."  *Hudson v. Commonwealth*, 202 S.W.3d 17, 20 (Ky. 2006) (citing *Perry v. Commonwealth*, 839 S.W.2d 268 (Ky. 1992)). Under that statute, "[a] defendant may be convicted of an offense that is included in any offense with which he is formally charged.  An offense is so included when: (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"  KRS 505.020(2).  Instructions on lesser-included offenses are warranted "if, and only if, on the given evidence a reasonable juror could entertain reasonable doubt as to the defendant's guilt of the greater offense, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense[.]"  *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999) (citations omitted).  When there is insufficient evidence to support or

---

[3] Kentucky Rules of Criminal Procedure.

justify the giving of an instruction, a trial court does not abuse its discretion in refusing to do so. *See Jerome v. Commonwealth*, 653 S.W.3d 81, 87 (Ky. 2022). Here, the trial court instructed the jury on burglary in the first degree and burglary in the second degree, but refused Sparkman's request for an instruction on burglary in the third degree as unsupported by the evidence. We discern no error.

"A person is guilty of burglary in the second degree when, with the intent to commit a crime, he or she knowingly enters or remains unlawfully in a dwelling." KRS 511.030(1). KRS 511.010(2) defines "dwelling" as any "building which is usually occupied by a person lodging therein." Under KRS 511.040, "[a] person is guilty of burglary in the third degree when, with intent to commit a crime, he knowingly enters or remains unlawfully in a building." "Building" is defined in KRS 511.010(1) as a structure "[w]here any person lives" or assembles for various purposes. Sparkman contends the jury could have found the Pucketts did not inhabit the Elm Street house and therefore it would qualify as a building rather than a dwelling, thus entitling him to the requested instruction. His assertion misses the mark.

A building need not be occupied at the time of a burglary to qualify as a dwelling. *See Cochran v. Commonwealth*, 114 S.W.3d 837, 838 (Ky. 2003) (citing *Haynes v. Commonwealth*, 657 S.W.2d 948, 952 (Ky. 1983); 13 Am. Jur. 2d *Burglary* § 8 (2003)). In *Haynes*, a house was still considered a dwelling despite the owner's death at the time of an unlawful entry because it was not empty, had not been abandoned, and was occasionally occupied by the

8

decedent's son. 657 S.W.2d at 952. In *Cochran*, another case in which the owner of a residence died prior to the unlawful entry, this Court held "a building does not lose 'dwelling' status when the building (1) has been used as a residence in the 'immediate past,' (2) is capable of occupancy at the time of unlawful entry, and (3) has not been abandoned." 114 S.W.3d at 839 (citations omitted). By contrast, a home which has been irreparably damaged, is uninhabitable and scheduled for demolition, and from which even the owner is prohibited from entering at night, does not qualify as a dwelling. *Shackleford v. Commonwealth*, 757 S.W.2d 193, 194 (Ky. App. 1988).

From the evidence adduced at trial, it is clear the Elm Street house was not occupied by the Pucketts as frequently as it had been in the past. However, it still contained furnishings and valuables, had utility services, and had not been abandoned. Brad testified he stayed there the night before leaving for vacation and had stayed in the home as recently as a week prior to trial. Based on these facts, we cannot conclude the Elm Street house lost its status as a dwelling. The trial court correctly so found. Thus, we hold there was no abuse of discretion in the trial court's refusal to instruct the jury on burglary in the third degree.

For the foregoing reasons, the judgment and sentence of the Henry Circuit Court is affirmed.

All sitting. All concur.

9

COUNSEL FOR APPELLANT:

Kathleen K. Schmidt
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General